IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JONATHAN DARYL PEACOCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: 1:14cv1207-WC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION

**I.     INTRODUCTION**

Jonathan Daryl Peacock ("Plaintiff") filed applications for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et seq*, and for supplemental security income under Title XVI of the Act, 42 U.S.C. § 1381, *et seq.*, on August 24, 2012.  His applications were denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ issued a decision finding Plaintiff not disabled from the alleged onset date of August 14, 2012, through the date of the decision.  Plaintiff appealed to the Appeals Council, which rejected his request for review of the ALJ's decision.   The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1]  *See Chester v. Bowen*, 792 F.2d

---

[1]     Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No.

129, 131 (11th Cir. 1986). The case is now before the court for review under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 9); Def.'s Consent to Jurisdiction (Doc. 8). Based on the court's review of the record and the briefs of the parties, the court AFFIRMS the decision of the Commissioner.

## II.   STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2011).

(1) Is the person presently unemployed?
(2) Is the person's impairment severe?
(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of

---

103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

[2]   A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

2

>Impairments]?
>(4) Is the person unable to perform his or her former occupation?
>(5) Is the person unable to perform any other work within the economy?
>An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step Four.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004).  A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step One through Step Four.  At Step Five, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC").  *Id*. at 1238-39.  The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence.  *Id*.  It may contain both exertional and nonexertional limitations.  *Id*. at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the

---

[3]   *McDaniel* is a supplemental security income (SSI) case.  The same sequence applies to disability insurance benefits.  Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases.  *See, e.g.*, *Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

claimant can perform.  *Id*. at 1239.  To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or call a vocational expert ("VE").  *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual.  *Phillips*, 357 F.3d at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*.

The court's review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.").  A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

---

[4]  *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings.   . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.   ADMINISTRATIVE PROCEEDINGS

Plaintiff was thirty-five years old on the alleged disability onset date, and had completed high school and a two-year degree program at a technical college. Tr. 29, 39-40. Following the administrative hearing, and employing the five-step process, the ALJ found at Step One that Plaintiff "has not engaged in substantial gainful activity since August 14, 2012, the alleged onset date[.]" Tr. 23. At Step Two, the ALJ found that Plaintiff suffers from the following severe impairments: "major depressive disorder, panic disorder, personality disorder, NOS, [and] Tourette's syndrome[.]" Tr. 23. At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" Tr. 24. Next, the ALJ articulated Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels except that the claimant has the following nonexertional limitations: limited to simple routine tasks of unskilled work involving no more than simple, short instructions and simple work related decisions with few work place changes and changes should be gradual. Claimant can interact with coworkers and supervision on a basic level but needs a well-spaced work environment to reduce the amount of interaction. He can have infrequent casual contact with public. Claimant cannot have any production pace work or work that requires rapid changes or multiple

>demands. Supervision should be non-confrontable; and claimant should not operate motorized equipment.

Tr. 25. Having consulted with a VE at the hearing, the ALJ concluded at Step Four that Plaintiff is "unable to perform any past relevant work[.]" Tr. 29. Finally, at Step Five, and based upon the testimony of the VE, the ALJ determined that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." Tr. 29. The ALJ identified several representative occupations, including, at the medium unskilled exertional level, "Hospital cleaner" and "Laundry worker," and, at the light unskilled exertional level, "Car checker." Tr. 30. Accordingly, the ALJ determined that Plaintiff "has not been under a disability . . . from August 14, 2012, through the date of this decision[.]" Tr. 30.

## IV.  PLAINTIFF'S CLAIM

Plaintiff presents one issue for the court to consider in its review of the Commissioner's decision, arguing that the Commissioner's decision should be reversed because the ALJ "failed to provide adequate weight to the opinions of Mr. Peacock's treating physician, Dr. Lopez." Pl.'s Br. (Doc. 12) at 7.

## V.  DISCUSSION

On April 25, 2013, Plaintiff's treating psychiatrist, Dr. Lopez, completed a psychological impairment questionnaire in which Dr. Lopez rated the degree of Plaintiff's impairments in a number of functional areas. *See* Tr. 295-97. Dr. Lopez

6

declined the form's invitation to provide comments regarding his impairment ratings (Tr. 297) and, apart from Dr. Lopez's treatment notes, the record does not appear to contain the "narrative report" which the questionnaire contemplates should be provided in addition to the questionnaire.  *See* Tr. 295.  In completing the questionnaire, Dr. Lopez indicated his opinion that Plaintiff suffers "marked" limitations, defined as "[a]n impairment which seriously affects ability to function," in a number of functional areas including the following: "ability to interact appropriately with the general public"; "degree of constriction of interests of the claimant"; "degree of restriction of the claimant's daily activities, e.g., ability to attend meetings (church, school, lodge, etc.), work around the house socialize with friends and neighbors, etc."; "ability to understand, remember, and carry out complex instructions"; "ability to maintain attention and concentration for extended periods"; "ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances"; "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of length and rest periods"; "ability to respond appropriately to supervision"; "ability to respond appropriately to changes in the work setting"; "ability to respond to customary work pressures"; and "ability to be aware of normal hazards and take appropriate precautions."  Tr. 295-97.

7

In his opinion, the ALJ surveyed the available treatment records from Dr. Lopez and SpectraCare, and summarized Dr. Lopez's opinion that "claimant essentially had marked deficiencies and restrictions in the majority of the categories listed" on the questionnaire provided to him.  Tr. 27.  Based upon his review of Dr. Lopez's treatment notes and the other evidence in the record, the ALJ gave "little weight" to Dr. Lopez's opinion.  Tr. 28.  The ALJ found that Dr. Lopez's responses on the questionnaire are largely "inconsistent with the physician's treatment and therapy notes . . . , which indicate the claimant essentially with normal affect, appropriate mood, and no side effect of medications."  *Id.*  Furthermore, the ALJ found notable that an "assessment" completed on March 18, 2013, less than a month before Dr. Lopez completed the questionnaire, "showed claimant with euthymic mood."  *Id.*; *see* Tr. 309.  The ALJ further noted that SpectraCare's treatment and therapy notes regarding Plaintiff generally demonstrate Plaintiff as reporting a euthymic mood "until they show problems after July 2013, when the claimant indicated he had filed for disability benefits, and was agitated over how long the process was taking."  Tr. 28.

Plaintiff argues that the ALJ erred in giving "little weight" to Dr. Lopez's opinion because Dr. Lopez's treatment notes actually support Dr. Lopez's opinions, and because Dr. Lopez's opinion is supported by the opinion of the consultative examiner, Dr. Jordan, as well as the testimony of Plaintiff at the hearing.  Pl.'s Br. (Doc. 12) at 9-11.  In *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 526 n.6 (11th Cir. 2015) (internal

8

quotations and citations omitted), the Eleventh Circuit explained the deference Social Security regulations ordinarily accord treating source opinion like that of a treating physician:

> [T]he opinion of a treating source (i.e., a medical professional who is able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)) is usually entitled to greater weight than the opinion of a medical professional who sees the claimant only once or for a brief period of time. An ALJ will also consider: the length, frequency, and nature of the provider-patient relationship, the extent to which a provider or other source presents relevant medical evidence to support his opinion, and the consistency of an opinion with the record as a whole.

Where medical source opinion is credited as a treating source opinion, it is ordinarily entitled to deference. "Absent 'good cause,' an ALJ is to give the medical opinions of treating physicians substantial or considerable weight." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quotation omitted).

> Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. With good cause, an ALJ may disregard a treating physician's opinion, but he must clearly articulate [the] reasons for doing so.

*Id.* (quotations and citations omitted).

As an initial matter, it is apparent that, while the ALJ ultimately gave Dr. Lopez's opinion "little weight," the RFC articulated by the ALJ includes several non-exertional limitations which, even if not as serious as Dr. Lopez might opine them to be, indicates that the ALJ at least agreed that Plaintiff has limitations in his mental functioning in

9

several of the areas identified by Dr. Lopez.  For example, Dr. Lopez opined that Plaintiff has "marked" impairment in his "ability to understand, remember, and carry out complex instructions" and "ability to respond appropriately to changes in the work setting."  Tr. 296.  The ALJ's RFC similarly instructs that Plaintiff must be "limited to simple routine tasks of unskilled work involving no more than simple, short, instructions and simple work related decisions with few work place changes and changes should be gradual[,]" and that Plaintiff "cannot have any production pace work or work that requires rapid changes or multiple demands."  Tr. 25.  Dr. Lopez opined that Plaintiff has a "marked" impairment in his "ability to respond appropriately to supervision."  Tr. 296.  The ALJ likewise found that Plaintiff "can interact with coworkers and supervision on a basic level but needs a well-spaced work environment to reduce the amount of interaction[,]" and that "[s]upervision should be non-confrontable."  Tr. 25-26.  Dr. Lopez opined that Plaintiff has "marked" impairment in his "ability to interact appropriately with the general public."  Tr. 295.  The ALJ found Plaintiff can have only "infrequent casual contact with public."  Tr. 25.  Thus, it is apparent that the ALJ recognized several of the functional limitations observed by Dr. Lopez and accounted for those limitations in the RFC.  As such, the ALJ's treatment of Dr. Lopez's opinion is better described as a slight difference of opinion about the degree to which Plaintiff is functionally limited by his acknowledged mental impairments, not a wholesale rejection of Dr. Lopez's opinion.

In any event, to the extent the ALJ indeed failed to provide controlling weight to Dr. Lopez's opinion as argued by Plaintiff, the ALJ had good cause to disregard Dr. Lopez's opinion and the ALJ adequately articulated those reasons in his opinion. First and foremost, the ALJ found that Dr. Lopez's opinion "is inconsistent with the physician's treatment and therapy notes . . . , which indicate the claimant essentially with normal affect, appropriate mood, and no side effect of medications." Tr. 28. Indeed, essentially all of Dr. Lopez's treatment notes in the record characterize Plaintiff as having appropriate appearance, affect, behavior, and thought processes, as well as euthymic mood. *See* Tr. 272 (Dec. 3, 2012); 309-10 (March 8, 2013); 307-08 (July 24, 2013); and 305 (Oct. 9, 2013).

Plaintiff points to no treatment notes in the record specifically authored by Dr. Lopez which lend support to the opinion Plaintiff faults the ALJ for failing to fully credit. Rather, Plaintiff points to a handful of records reflecting Plaintiff's participation in therapy sessions which were not produced by Dr. Lopez. *See* Pl.'s Br. (Doc. 12) at 9-10. For example, Plaintiff points to a January 3, 2013, "Progress Note" from Plaintiff's group therapy session in which Plaintiff "expressed lots of anxiety" during group therapy over his "home situation and recent deaths in his family[,]" for which he received "support and encouragement" from the group therapist. Pl.'s Br. (Doc. 12) at 9 (citing Tr. 276-77). Plaintiff does not explain how this singular complaint of anxiety related to his home environment and recent deaths in his family lends support to Dr. Lopez's opinions about

11

Plaintiff's functional limitations. Indeed, a subsequent group therapy note reflects Plaintiff's report that "he and his mother have recently moved to a different residence and it will be a more peaceful environment[.]" Tr. 319. *See also* Tr. 324 (March 4, 2013, group therapy note stating Plaintiff "and his mother have relocated and the home environment has much improved and lowered his anxiety level.").

Plaintiff also points to several additional group therapy session notes which "reflect Mr. Peacock has poor sleep/insomnia, dysphoric mood, is easily distracted, depressed and anxious, impaired recent memory, he finds himself flinching when people raise their voices or hands, and having limited insight and judgment." Pl.'s Br. (doc. 12) at 9. Plaintiff argues these "findings are inconsistent with the ALJ's conclusion that Dr. Lopez's treatment notes are inconsistent with his psychological assessment. Instead, these findings actually *support* Dr. Lopez's assessment of moderate and marked limitations in Mr. Peacock's psychological functioning." *Id.* at 9-10. Notably, apart from the clinical intake assessment (Tr. 283-88) cited by Plaintiff, all of the records cited by Plaintiff as substantiating Dr. Lopez's April 25, 2013, opinion are dated after April 25, 2013. *See* Pl.'s Br. (Doc. 12) at 9 (citing Tr. 331, 333, 337, 340, 343, and 352). It is unclear how notes from group therapy sessions which occurred after Dr. Lopez's opinion was rendered can establish that the opinion is consistent with the physician's treatment notes. Nevertheless, given that none of these group therapy session notes are attributed to Dr. Lopez, it unclear to what extent the notes could constitute Dr. Lopez's own

12

"findings." Certainly, such supposed "findings" are not reflected in the very few treatment notes actually authored by Dr. Lopez in the record. *See* Tr. 272, 309-10, 307-08, and 305.

Furthermore, as the ALJ observed, the group therapy notes included in the record forcefully indicate that the greatest source of anxiety and depression for Plaintiff, especially after his anxiety was improved by relocating with his mother, was his financial situation and the perceived slow progress of his application for disability benefits. *See* Tr. 333 (May 20, 2013); 337 (June 17, 2013); 340 (July 15, 2013); 335 (Aug. 3, 2013); 347 (Aug. 19, 2013); 348 (Sept. 16, 2013); 352 (Oct. 21, 2013); and 358 (Nov. 18, 2013). Plaintiff provides no explanation as to how his anxiety over his financial situation and the progress of his disability application somehow supports Dr. Lopez's prior opinion about his several purported "marked" limitations in psychological functioning. In short, then, the ALJ's decision that Dr. Lopez's opinion is inconsistent with his "treatment and therapy notes" is supported by substantial evidence.

Plaintiff also argues that the ALJ erred in rejecting Dr. Lopez's opinion because such opinion is "bolstered by the opinion of consultative psychological examiner Dr. Randy Jordan." Pl.'s Br. (Doc. 12) at 10. However, the ALJ also gave Dr. Jordan's opinion "little weight" because "certain aspects of the psychological consultative examination, such as the GAF of 40, [are] not supported by or consistent with the examination findings." Tr. 28. Plaintiff has not challenged the ALJ's given reasons for

13

his decision to afford Dr. Jordan's opinion "little weight." Thus, it is of no moment that Plaintiff perceives some parts of Dr. Jordan's opinion as corroborating that of Dr. Lopez, where the ALJ rejected both opinions and provided "good cause," supported by substantial evidence, for his decision to reject such opinions.

Plaintiff's final contention is that the ALJ erred in discrediting Dr. Lopez's opinion because such opinion "is bolstered even further[] by Mr. Peacock's own sworn testimony." Pl.'s Br. (Doc. 12) at 11. However, the ALJ determined that Plaintiff's subjective testimony about his mental limitations is not "fully credible" due, in part, to Plaintiff's history of conservative treatment for his mental impairments, favorable response to outpatient mental health treatment, and the nature of his reported activities of daily living. Tr. 27-28. Plaintiff has not separately challenged the ALJ's credibility determination. Thus, it is of no moment that Plaintiff believes some aspects of his subjective testimony corroborate Dr. Lopez's opinion. The ALJ articulated good cause, supported by substantial evidence, for his decision to discount Dr. Lopez's opinion, and Plaintiff's own "not fully credible" testimony cannot serve as a basis for a finding that the ALJ erred in his treatment of Dr. Lopez's opinion.

## VI. CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is AFFIRMED. A separate judgment will issue.

Done this 25th day of November, 2015.

                                              /s/ Wallace Capel, Jr.
                                              UNITED STATES MAGISTRATE JUDGE